FILED
United States Court of Appeals
Tenth Circuit

July 20, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

STACIE MONTGOMERY,

    Defendant-Appellant.

No. 10-8015

(D.C. No. 1:09-CR-00297-WFD-1)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE,** Chief Judge, **TACHA,** and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore,
submitted without oral argument.

Defendant-Appellant Stacie Montgomery appeals the sentence imposed after her
guilty plea, contending that it was procedurally unreasonable. Specifically, she argues
that the district court committed clear error in ruling that she was ineligible for a

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5C1.2(a). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

## I

On September 17, 2009, a grand jury empaneled in the United States District Court for the District of Wyoming returned a one count indictment charging Montgomery with conspiracy to possess with intent to distribute and to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Three months later, on December 16, 2009, Montgomery entered a plea of guilty to the charge alleged in the indictment.

Prior to sentencing, the probation office prepared a Presentence Investigation Report ("PSR"). Therein, the details of a proffer which had been obtained from Montgomery's co-conspirator, Michael Kutzer,[1] were set forth. In Kutzer's proffered testimony, he explained that he and Montgomery were engaged in a romantic relationship and that the two had entered into a "partnership" whereby Kutzer would purchase methamphetamine that he and Montgomery would jointly distribute. Kutzer's proffered testimony also indicated that Kutzer and Montgomery lived together and that at one point, Kutzer exchanged a quantity of methamphetamine for a .380 caliber Hi-Point pistol which he gave to Montgomery, who in turn placed it in a safe located in the home where

---

[1] Kutzer was charged separately.

they lived.[2]  Finally, the PSR noted that after Kutzer's arrest, a .380 caliber Hi-Point pistol was found in the bedroom shared by Montgomery and Kutzer.

As a result of the possession of a deadly weapon detailed in Kutzer's proffer, the PSR recommended applying a 2-level enhancement to Montgomery's offense level pursuant to U.S.S.G. § 2D1.1(b)(1).  The PSR also recommended that Montgomery's offense level be reduced by 3 levels pursuant to U.S.S.G. § 3E1.1 in light of her acceptance of responsibility.  This brought Montgomery's total offense level to 31 which, when coupled with her criminal history category of I, led to an advisory Guidelines range of 108 to 135 months' imprisonment.  Because, however, the statutorily required minimum sentence for the crime to which Montgomery pled guilty is 120 months' imprisonment, see 21 U.S.C. § 841(b)(1)(A)(viii), pursuant to U.S.S.G. § 5G1.1(b), the PSR ultimately recommended an advisory Guidelines range of 120 to 135 months' imprisonment.

Prior to sentencing, Montgomery filed written objections to the PSR.  First, she objected to the recommended application of § 2D1.1(b)(1), arguing that "she never touched the firearm or took any active role in the 'possession' of the firearm."  ROA, Vol. 2, at 72.  Second, Montgomery noted her belief that the application of a 2-level enhancement pursuant to § 2D1.1(b)(1) "should not preclude her from being 'safety valve' eligible" under U.S.S.G. § 5C1.2(a).  Id.  The government responded to

_____

[2] Though it was not referenced in the PSR, the government introduced a proffer obtained from Montgomery at sentencing wherein Montgomery "denied ever getting a gun from Kutzer . . . ."  ROA, Supp. Vol. 1, at 22.

Montgomery's objections by arguing, (1) that a 2-level enhancement pursuant § 2D1.1(b)(1) was warranted, and (2) that the district court would have to decide whether Montgomery's possession of the .380 caliber Hi-Point pistol precluded the application of § 5C1.2(a).

At sentencing, the government introduced Kutzer's and Montgomery's proffers into evidence and both sides presented arguments. Subsequently, the district court determined that not only was a 2-level enhancement pursuant to § 2D1.1(b)(1) warranted, but also that § 5C1.2(a) did not apply. The district court then sentenced Montgomery to 120 months' imprisonment, which was at the bottom of her advisory Guidelines range. Montgomery then filed this timely appeal, challenging only the district court's determination that § 5C1.2(a) is inapplicable.

## II

Congress has mandated that "in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846)," a district court "shall impose a sentence pursuant to [the Sentencing Guidelines] . . . without regard to any statutory minimum sentence," provided that the district court finds (1) that the defendant does not have more than 1 criminal history point; (2) that the defendant neither used violence or credible threats of violence, nor "possess[ed] a firearm or other dangerous weapon . . . in connection with the offense" for which he or she is being sentenced; (3) that the offense for which the defendant is being sentenced did not result in death or serious bodily injury to any person; (4) that the defendant was neither an organizer,

leader, manager, or supervisor of others in the offense for which he or she is being sentenced nor was he or she engaged in a continuing criminal enterprise; and (5) that by the time of the sentencing hearing, the defendant had truthfully provided to the government all information regarding the offense known to him or her. 18 U.S.C. § 3553(f); accord U.S.S.G. § 5C1.2(a). The defendant bears the burden of establishing the five aforementioned criteria by a preponderance of the evidence. United States v. Zavalza-Rodriguez, 379 F.3d 1182, 1185 (10th Cir. 2004). We, in turn, review for clear error the district court's determination of whether the defendant has satisfied this burden. Id. at 1184.

As previously noted, Montgomery does not challenge the district court's application of § 2D1.1(b)(1). Rather, she challenges the district court's determination that she personally possessed .380 caliber Hi-Point in connection with her drug offense and that § 5C1.2(a) is, consequently, inapplicable. In support of her argument, Montgomery notes that in discussing the interplay between §§ 2D1.1(b)(1) and 5C1.2(a), we have held that:

> [S]entence enhancement pursuant to § 2D1.1(b)(1) does not foreclose sentence reduction pursuant to § 5C1.2(a)(2). The scope of activity covered by § 2D1.1 is broader than the scope of activity covered by § 5C1.2. For purposes of § 2D1.1 constructive possession, either physical proximity or participation in a conspiracy, is sufficient to establish that a weapon "was possessed." Whereas for purposes of § 5C1.2 we look to the defendant's own conduct in determining whether the defendant has established by a preponderance of the evidence that the weapon was not possessed "in connection with the offense."

Id. at 1188. Montgomery contends that the district court ran afoul of this mandate by

5

failing to focus on her conduct in determining the nature of her firearm possession.

More specifically, Montgomery argues that Kutzer's exchange of methamphetamine for the firearm, the only connection she claims can be established between the .380 caliber Hi-Point and illegal drugs, cannot be attributed to her because "there is nothing indicating that [she] knew about how the transaction occurred . . . ." Aplt. Br. at 13. Thus, Montgomery contends that because "[t]here is absolutely nothing in the record or evidence that would indicate the gun was carried, brandished, or even referred to during the course of the crime for which she was charged and convicted," id. at 12, her constructive possession of the firearm was not connected with her drug crime, see id. at 13 ("General knowledge of the weapon, known otherwise as 'constructive possession' is enough for the two level increase [of § 2D1.1(b)(1)]. But a more specific finding . . . is necessary to deny the . . . Safety Valve reduction.").

However, contrary to Montgomery's suggestion, there was sufficient evidence from which the district court could determine that she constructively possessed the .380 caliber Hi-Point in connection with her drug crime. As the district court noted, Kutzer's proffer established that the firearm was kept in the residence out of which Kutzer and Montgomery operated their drug conspiracy and that consequently, Montgomery "[was] a drug dealer who had the ability to possess [the] firearm in furtherance of her drug-trafficking crime." ROA, Vol. 3, at 49. Thus, because we have previously held that "a firearm's proximity and potential to facilitate the offense is enough to prevent application of [§ 5C1.2(a) ]," United States v. Hallum, 103 F.3d 87, 89 (10th Cir.1996), we conclude

6

that the district court did not clearly err in determining that Montgomery had failed in her burden of establishing that § 5C1.2(a) did not apply in this case. See United States v. Herrera, 446 F.3d 283, 287 (2d Cir. 2006) ("We see no reason why, for purposes of the safety valve, possession would not . . . include constructive possession, at least where the defendant keeps the weapon under his personal dominion and control.").

## III

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge